**SO ORDERED.**

**SIGNED this 5th day of August, 2016.**



_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | |
| DOYL EUGENE MOORE<br>TRUDY LYNNE MOORE | Case No. 15-12254<br>Chapter 13 |
| Debtors. | |

### ORDER CONFIRMING CHAPTER 13 PLAN

"Fee-only" chapter 13 cases are not *per se* impermissible, but, as with any other chapter 13 case, the debtor must have filed the case and proposed the plan in good faith within the totality of the circumstances.[1] Doyl and Trudy Moore are septuagenarians with bad health history. They live on social security--which is

---

[1] *See* 11 U.S.C. § 1325(a)(3) and (a)(7); *see also Flygare v. Boulden,* 709 F.2d 1344, 1347-48 (10th Cir. 1983), citing non-exclusive list of eleven factors from *United States v. Estus (In re Estus),* 695 F.2d 311, 316-17 (8th Cir. 1982); *Anderson v. Cranmer (In re Cranmer),* 697 F.3d 1314, 1318 (10th Cir. 2012).

1

entirely exempt from garnishment and excluded from the current monthly income calculation—and their very limited savings.[2] Because they could not afford to pay their lawyer a chapter 7 retainer in advance, they instead filed for chapter 13 relief and proposed a plan that will pay their attorney fees and expenses of $3,350 along with a small dividend to their unsecured creditors over 36 months. They proposed this dividend even though none of their income can be reached by a general unsecured creditor, and the Bankruptcy Code does not require them to pay a dividend in any amount under their circumstances. Nothing in the Code prevents them or debtors like them from filing and confirming a chapter 13 plan if they have otherwise proceeded in good faith. These debtors filed their case and proposed their plan in good faith and the plan should be confirmed.[3]

Facts

When Doyl and Trudy Moore filed this case on October 15, 2015, both were in their 70s. Each of them has had bad health problems. Trudy has suffered two brain aneurysms. While in surgery for the second one, she suffered a stroke. She has mostly rehabilitated, but cannot work. Doyl had a heart attack in 2008 after he retired and has had a heart valve replacement. Mr. Moore could work, but he has also been encouraged to minimize stress. Ms. Moore was a paralegal before she retired when she had her stroke in 2005; Mr. Moore was in industrial sales before he retired at age

---

[2] *See* 42 U.S.C. § 407(a) (Social security benefits exempt) and 11 U.S.C. § 101(14) (Social security benefits excluded from current monthly income).

[3] The bankruptcy court has subject matter jurisdiction over this core proceeding. 28 U.S.C. § 1334(b) and § 157(a) and (b)(2)(L). Debtors Doyl and Trudy Moore appeared in person and by their attorney Rick E. Hodge, Jr. The chapter 13 trustee Laurie B. Williams appeared to prosecute her objection to confirmation.

2

66 in 2007 to help care for Ms. Moore. Ms. Moore's adult daughter was badly hurt in a car accident several years before she retired and Ms. Moore was responsible for supporting her. Between them, the Moores receive Social Security benefits that total $3,461 per month. All of their income is fully exempt income, and expressly excluded from the disposable income calculation under the Bankruptcy Code.[4] As such they have no "current monthly income" and are well below the median income in Kansas.[5] Their Schedule B discloses Ms. Moore's participation in a TVM (transvaginal mesh) class action lawsuit that has been pending for two years. Both acknowledged at trial that any recovery Ms. Moore receives should be turned over to the chapter 13 trustee. The Moores drive two unencumbered cars that are at least 13 years old and have more than 100,000 miles on them. On the date of trial in May of 2016, one car was inoperable because the rear brakes needed to be replaced. The Moores have lived in their home for over 30 years, but after a series of refinances most recently concluded in May of 2015, they still owe over $93,000 against it. These assets are also exempt. The Moores are judgment proof.

Of necessity, the Moores live frugally. On their monthly social security income of $3,461, the Moores' Schedule J expenses total $2,728, leaving them with an exempt surplus, on paper, of about $732. Mr. Moore thought that he had underestimated

---

[4] *See* 42 U.S.C. § 407(a); 11 U.S.C. § 101(10A)(B) excludes benefits received under the Social Security Act from current monthly income, and by extension, from disposable income under § 1325(b)(2) – " . . . 'disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . ."
[5] 11 U.S.C. § 101(10A)(defining "current monthly income") and § 1325(b)(2) (defining "disposable income" for purposes of determining the amount of projected disposable income to be paid over the applicable commitment period to unsecured creditors under § 1325(b)(1)(B)).

**3**

some of their expenses and that unexpected costs (like the failed rear brakes on Ms. Moore's car) keep cropping up. Both of them testified that they never have a month in which they have $732 "left over." Indeed, their expenses appear to be understated. For instance, their scheduled monthly home maintenance and repair expense of $15 is unlikely to be sufficient. Their house payment has gone up twice since the case was filed. Their combined food and personal items allotment of $600 also seems low.

Before the Moores filed this case, they had become reliant on credit cards to supplement their income. While they do not appear to have debt that is directly related to their medical problems, both testified that their debt problems became acute when Ms. Moore got sick and couldn't work. Expenses went up and income went down. Mr. Moore took over the family's finances and candidly testified that he isn't particularly "good with money." They established a very unwise (but apparently very necessary) course of practice of making minimum credit card payments and then paying utilities and other current bills with whatever credit availability they had, continually robbing Peter to pay Paul. Shortly before they filed, they took out an additional $1,000 loan, refinancing a previous obligation to One Main Financial. That sufficed to get them through a few months, but when they filed, both debtors testified that they were about to descend into default.

The claims register shows that credit card creditors have filed over $50,000 in claims in the case; taken with their $93,000-plus mortgage balance, the Moores owed over $145,000 on the date of the petition. They had $2,182 in their checking account and $785 in a custodial savings account for one of their grandchildren. At the first

4

meeting of creditors, the trustee asked why this money could not be addressed to a chapter 7 attorney fee and the Moores responded that, among other things, they were trying to preserve some of it for Christmas presents for their extended family of 15 grandchildren, 9 great-grandchildren and one great great-grandchild. They also had life and health insurance premiums coming due, as well as utilities. Mr. Moore described their existence as a struggle to stay solvent each month until the next social security payment arrived. In those circumstances, it is unlikely that he and Ms. Moore could have saved a $2,000 retainer to pay a chapter 7 lawyer.

Concerning the attorney's fees, Mr. Moore testified that their attorney, Mr. Hodge, quoted a fee of $2,000 plus a filing fee deposit for a chapter 7 case, but that all of it was payable in advance. For a chapter 13, however, Mr. Hodge asked for a $3,000 attorney's fee plus a filing fee deposit of $310, all of which could be payable over the life of the plan. Because of their other impending obligations, the Moores preferred to husband their savings and file a chapter 13. Ms. Moore testified at trial that she had tried to get her husband to file for bankruptcy over a period of years because money had continually been a source of stress, and they were not making headway on the credit card debt.

Wichita bankruptcy attorney William H. Zimmerman, Jr., testified that a typical chapter 7 fee in this area is $1,500. Like Mr. Hodge, Zimmerman charges $3,000 plus a cost deposit for a chapter 13 case. He obtains a $250 "processing fee" when clients initially consult him, then recovers the balance of the fee during the

plan's payment period. In closing argument, Hodge stated that his chapter 7 fee has dropped to $1,500 since the Moores filed their case.

The Moores proposed a 36-month chapter 13 plan that provided for monthly payments of $125, enough to pay their attorney's $3,350 fee[6] plus the filing fee of $310 in full and leave a small sum for chapter 13 trustee's fees ($360) and unsecured creditors ($480).[7] Their house payment is paid directly to the lender. It will soon increase to cover an escrow shortage according to a more recent Notice of Fees filed by their lender, Freedom Mortgage, on May 3, 2016. They currently pay a small escrow arrearage through an increased house payment, $727.01, and may need to extend their plan period or raise their plan payment to address the Notice of Fees. The Trustee objected that the plan was not filed in good faith.[8] She notes that their plan is "slightly unfeasible," but stipulated that the feasibility problem can be resolved and should not be the basis for denying confirmation.[9]

The debtors' plan payments of $125 will pay Mr. Hodge's fee over 27 months. The 9 remaining payments will go to the unsecured creditors and the filing fee. The chapter 13 trustee's primary objection to the plan is that the debtors are not proceeding in good faith by filing a plan that pays only their attorney fees and a small dividend when they are eminently qualified for chapter 7 relief. The debtors respond that they could not afford to pay a flat fee for chapter 7 representation and that without access to chapter 13, they are effectively barred from bankruptcy relief. The

---

[6] The attorney's fee includes a $350 case closing fee.
[7] Doc. 2
[8] Doc. 17; 11 U.S.C. 1325(a)(3).
[9] Doc. 34, ¶ 22.

**6**

parties submitted a comprehensive stipulation of facts that was supplemented by testimony at a hearing conducted on May 17, 2016 as well as trial briefs.[10]

Analysis

The requirements for confirmation of a chapter 13 plan are listed in § 1325(a).[11] Broad discretion is left to the bankruptcy judge to determine whether the debtors have filed in good faith and whether their plan has been proposed in good faith. Several Tenth Circuit cases illuminate the good faith standard by providing a series of factors to consider and by directing bankruptcy judges to consider the "totality of the circumstances" in determining the presence or absence of good faith. Section 1325(a)(3) is a good place to start. The trustee suggests that the Moores proposed their plan in other than good faith for these reasons. They have zero current monthly income, hence zero disposable income, making them ideal candidates for chapter 7 relief. She argues that they could have saved the $2,000 they needed to pay their lawyer in advance for a chapter 7 filing. She also argues that their proposed contribution to their unsecured creditors is too small, making the case difficult to administer.

Nothing in the Bankruptcy Code prohibits the Moores from filing a chapter 13 case if they are eligible for that relief. Section 1325(a)(3) provides "Except as provided in subsection (b), the court shall confirm a plan if— … the plan has been proposed in good faith and not by any means forbidden by law."[12] Section 1325(a)(7) provides that

---

[10] Doc. 34 (Stipulation), 35 (Trustee's Brief), and 36 (Debtors' Brief).
[11] 11 U.S.C. § 1325.
[12] 11 U.S.C. § 1325(a)(3).

7

the Court must also find that "the action of the debtor in filing the petition was in good faith."[13] "Good faith" is a concept undefined in the Code. In this Circuit, courts address good faith by applying the "*Flygare* factors" found in *Flygare v. Boulden* and refined in *Anderson v. Cranmer*.[14] The non-exclusive good faith factors include –

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee."[15]

*Cranmer* makes clear that the test of good faith in this Circuit is not confined to the *Flygare* factors. It recognized that the BAPCPA amendments in § 1325(b) subsumed some of the *Flygare* "ability to pay" factors and that, in addition to the relevant *Flygare* factors, "any other relevant circumstances" may be considered.[16] In short, *Cranmer* instructs that the good faith determination is one made on a case-by-case

---

[13] 11 U.S.C. § 1325(a)(7).
[14] *Flygare v. Boulden*, 709 F.2d 1344, 1347-48 (10th Cir. 1983); *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1319 n. 5 (10th Cir. 2012) (noting that a debtor's "ability to pay" provided under § 1325(b)'s calculation of projected disposable income subsumes several of the *Flygare* factors).
[15] *Flygare*, 709 F.2d 1344, 1347-48.
[16] *Cranmer,* 697 F.3d 1314, 1318-19 (Social security benefits should not be considered in good faith analysis where social security benefits are statutorily excluded from projected disposable income calculation under BAPCPA.).

8

basis considering the totality of the circumstances.[17] Ultimately, the focus of the good faith inquiry is whether the plan "constitutes an abuse of the provisions, purpose or spirit of Chapter 13."[18]

Only three courts of appeal have addressed the fee-only scenario. Each of the three cases feature different fact patterns, but all three panels agree on this much: the Code contains no *per se* rule prohibiting this practice.[19] Each of the three cases has a fact or two similar to the Moores' case. In *Puffer*, the debtor had $100 a month to pay $15,000 in debts. His attorney advised him to file a chapter 13 case for $4,100 when he was unable to pay a $2,300 chapter 7 retainer.[20] In *Crager*, the debtor was surviving on social security income and food stamps while trying to pay a small mortgage and credit cards. She filed a chapter 13 because she couldn't afford a chapter 7 fee. In *Brown*, the debtor could only muster $150 per month in discretionary income on his $1,100 monthly social security payment. He owed $16,000 and agreed to pay his attorney $2,000 in chapter 13 fees over time.

In *Puffer*, the First Circuit reversed and remanded to the bankruptcy court to determine whether the plan had been filed in good faith.[21] In *Crager*, the Fifth Circuit

---

[17] 697 F.3d at 1318, citing *Flygare v. Boulden,* 709 F.2d 1344, 1347.
[18] *Flygare,* 709 F.2d at 1347, quoting *United States v. Estus (In re Estus),* 695 F.2d 311, 316-17 (8th Cir. 1982); *Cranmer,* 697 F. 3d at 1319 n. 5 (relevant circumstances include whether debtor unfairly manipulated the Code or made any misrepresentation to mislead the court).
[19] *See Berliner v. Pappalardo (In re Puffer),* 674 F.3d 78, 82 (1st Cir. 2012); *Sikes v. Crager (In re Crager),* 691 F.3d 671, 675-76 (5th Cir. 2012); and *In re Brown,* 742 F.3d 1309, 1318 n. 7 (11th Cir. 2014).
[20] The debtor in *Puffer* ultimately converted to chapter 7 after his bankruptcy court refused to confirm a fee-only case. This case is an appeal from the bankruptcy court's denial of Puffer's attorney's application for fees billed in connection with pre-conversion work.
[21] 674 F.3d at 82-83 (concluding that the bankruptcy court erred as a matter of law in applying a *per se* rule).

**9**

reversed a district court holding that the bankruptcy court had erred in confirming a fee-only plan and declined to impose a *per se* rule. That court applied a clearly erroneous standard of review, deferring to the bankruptcy court's findings and emphasizing that the trial court had observed the witnesses' demeanor and credibility.[22] In *Brown*, the Eleventh Circuit affirmed the bankruptcy judge's denial of confirmation. The bankruptcy judge, after hearing testimony, concluded that the debtor would discontinue payments after the attorney's fees were paid and before the unsecured creditors received a distribution.[23]

Two of these courts of appeal noted that the bankruptcy judge had properly applied the totality of the circumstances test and the third, in *Puffer*, found that the bankruptcy court erred as a matter of law in applying a *per se* test. All three courts agreed that each case is different. In each, the bankruptcy judge had the benefit of observing the witnesses and evaluating their credibility. Each appellate court reviewed the bankruptcy judge's findings for clear error.

No Tenth Circuit case directly addresses a fee-only plan so there is no authority that prohibits attorney fee-only chapter 13 plans. Nor is there a minimum payment requirement. In *Flygare,* issued long before the BAPCPA amendments, the Tenth Circuit Court of Appeals held that a *per se* minimum payment requirement to unsecured creditors as an element of good faith is unwarranted.[24] In *In re Cranmer,*

---

[22] 691 F.3d at 675.
[23] The bankruptcy court emphasized the "abysmal failure rate [65%] of chapter 13 cases" in its division. 742 F.3d at 1318.
[24] 709 F.2d at 1348 (criticizing bankruptcy court for only considering "the small percentage of payment to unsecured creditors.").

**10**

issued after BAPCPA, the Tenth Circuit provided further guidance on this point.[25] The Court held that withholding social security income from plan payments did not represent a lack of good faith in and of itself, absent other evidence. Unlike the Moores, Cranmer was an above-median income debtor who expected to receive nearly $87,000 in social security income over his plan's five-year term. Cranmer sought to exclude that income from his plan. Section 101(10A) expressly excludes social security from the definition of "current monthly income," the key component of "disposable income" as that term is defined in § 1325(b)(2). *Cranmer* noted that social security income doesn't come into play in determining a debtor's projected disposable income because it is shielded by the Social Security Act from "execution, levy, attachment, garnishment, or other legal process" as well as "the operation of any bankruptcy or insolvency law."[26] Answering the trustee's argument that even if the income was shielded from the calculation of projected disposable income, the debtor should be subject to a conceptually separate good faith inquiry, the Tenth Circuit concluded that excluding the social security income did not represent a lack of good faith; holding the opposite would essentially render the Code's statutory exclusion of social security from the disposable income calculation meaningless.[27]

In this District, both Chief Judge Karlin and Judge Berger have recently issued opinions on the fee-only issue. Those cases feature bleak fact patterns that are similar to those in *Puffer*, *Crager*, and *Brown*. In *In re Wark*, for instance, Chief Judge Karlin

---

[25] *Anderson v. Cranmer (In re Cranmer),* 697 F.3d 1314 (10th Cir. 2012).
[26] 697 F.3d. 1314, 1318, citing 42 U.S.C. § 407(a).
[27] *Id.* at 1319.

**11**

heard ten separate cases in which the debtors variously were beset with ongoing medical bills, garnishments, non-dischargeable student loan debt, failing automobiles and other like challenges.[28] She, too, held that there is no *per se* rule precluding the confirmation of a fee-only plan so long as the debtors otherwise demonstrated good faith motivation in filing their petitions and plans. Chief Judge Karlin noted that --

> . . . Yes, there may be no distribution to unsecured creditors. Again, in a perfect world, all debtors would file Chapter 13 plans and repay all their debts, and no creditor would walk away empty handed. But we do not live in that world.
>
> Instead, this is a world where debtors are harassed by daily collection calls for admittedly delinquent debts. Where they are repeatedly required to miss work to attend a cattle call docket to explain why they haven't paid old medical bills. Where they cannot afford to keep the gas on, and feel compelled to incur title or payday loans at exorbitant rates to feed their families. Where their meager wages are reduced even further by garnishments. Where they opt not to seek necessary medical care or take prescribed medication because they cannot afford it. This is the world these Debtors live in, and this real world sometimes requires bankruptcy, even if the debtor cannot save enough to pay the up front [sic] attorney's fees required to file a Chapter 7.[29]

Likewise, in *In re Dunson, In re Doucet,* and *In re Dugan and Dresch*, Judge Berger dealt with cases involving debtors with numerous dependents, low incomes, collection bench warrants, ongoing health care needs, utility shut-offs, and active garnishments.[30] He confirmed debtors' plans in all three cases.

---

[28] 542 B.R. 522 (Bankr. D. Kan. 2015).
[29] *Id.* at 578.
[30] *In re Dunson*, 550 B.R. 537 (Bankr. D. Kan. May 3, 2016); *In re Doucet*, No. 15-21531, 2016 WL 2603072 (Bankr. D. Kan. May 3, 2016); and *In re Dugan and Dresch*, 549 B.R. 790 (Bankr. D. Kan. May 3, 2016).

**12**

Admittedly, the Moores' case seems less dire than some of the other cases. But nothing in the Code requires that the debtors' situation resemble *The Grapes of Wrath*.[31] All the Code asks is that they proceed in good faith. The three most relevant *Flygare* factors here are whether there are special circumstances, whether this plan will place an administrative burden on the trustee, and whether the debtors have the requisite "motivation and sincerity." This plan passes all three tests.

The Moores are both over 70, they no longer work, and their capacity to do so is questionable at best. When they filed this case, they had a little more than $2,100 in the bank, less than one month of their reported expenses and earmarked for recurring obligations. Their social security income, which is exempt from any creditor's collection efforts, exceeds their expenses by $600, after their monthly plan payment. They propose to remain in bankruptcy for the period of time they're required to, 36 months. Their filings are accurate. Other than their attorney, they do not offer any class of debt preferential treatment, nor do they seek to modify a secured claim. They have not filed for bankruptcy relief before and none of their debts would be excepted from discharge.

The debtors' bad health and work limitations suggest special circumstances. Though they have no direct medical debt, they both testified that their reliance on credit cards increased after Ms. Moore got sick and Mr. Moore retired. She has survived a series of brain surgeries. He has had a heart attack and a valve

---

[31] John Steinbeck, *The Grapes of Wrath*, Viking (1939).

**13**

replacement. Neither should be exposed to much stress and, given their age, it is no reach to assume that they will incur more medical expenses over the next three years.

There is no evidence that this plan will be more burdensome for the trustee to administer than any other. The debtors receive regular monthly social security payments (presumably via direct deposit) that they use to pay their plan payments. Their house payment is withdrawn directly from their bank account. While the trustee's "handle" will be low and won't yield much of a trustee's fee, we routinely confirm plans that offer monthly payments as low or lower without objection. If anything, this case will be *easier* to administer than most, given the very secure nature of the Moores' income and its short duration.

The most important factor to consider here is the Moores' motivation and sincerity in opting to file chapter 13. They each credibly testified that while they understood their social security benefits to be exempt, they wanted to pay "something" on their debt. They also credibly testified that their ability to accumulate a $2,000 cash retainer to file a chapter 7 cases was very low. As a couple on social security and who owe more than $50,000 in unsecured credit card debt, they are appropriate candidates for bankruptcy relief. It is true that they are eligible for and, perhaps, best suited to be in chapter 7, but that is not a reason to bar them from filing a chapter 13. Nothing in the Code prevents them making that choice. Indeed, the policy of the post-BAPCPA Code, as expressed in § 707(b) and § 1325(b)(3), drives debtors to chapter 13 so that their creditors may receive some dividend. The Moores had nearly enough in the bank to pay a chapter 7 retainer, but, as Mr. Moore testified,

**14**

that money was earmarked for insurance premiums and other recurring expenses as well as Christmas expense. I found the debtors' explanation – a desire to maintain a small cash reserve and fear of aggressive collection tactics — entirely credible in light of their having had to borrow twice within six months of their filing to keep their debts current. Their financial situation was spiraling downward.

By filing a chapter 13 case, they can pay their lawyer over time, something they could not do in a chapter 7. While Mr. Hodge quoted the Moores a chapter 7 fee at the high end of the local range, his chapter 13 fee is the same as that quoted by the trustee's expert, Mr. Zimmerman. He will have to wait for at least 27 months to realize that fee in full. There is no hint in the record that he placed his clients in chapter 13 solely for his benefit. As Judge Berger noted in *Doucet*:

> Courts fear attorneys choose Chapter 13 instead of Chapter 7 to secure higher fees and win the client when they cannot otherwise afford Chapter 7's upfront costs. This view is misplaced for two reasons. First, under an attorney-fee-only plan, that attorney foregoes compensation should the debtor's plan not be confirmed. Additionally, confirmation does not mean that same attorney is off to the bank. That attorney may not be fully compensated should the debtor's plan collapse down the road. Attorneys filing Chapter 7s do not face this risk. This is an important distinction as much of an attorney's time and effort is spent pre-petition and pre-confirmation driving a debtor's plan to confirmation. The reality is that lower income debtor's cases are time consuming. Second, money is worth more the sooner it is received–the time value of money.[111] Securing a fixed fee over three to five years is different than receiving that same guaranteed fee today.[32]

The Moores also provided for a small dividend to their creditors. Small as it is, that dividend exceeds what these creditors would receive in a chapter 7 or a collection action: nothing. The Moores' income and assets are all exempt. And, as the court in

---

[32] *In re Doucet*, 2016 WL 2603072, at *8.

**15**

*Cranmer* held, their reluctance to commit more of their fully exempt social security income to their unsecured creditors cannot be bad faith.[33]

Finally, the Moores are not obligated by any provision of the Code to remain in chapter 13 longer than 36 months. Even if all of their income wasn't exempt, they would still be below-median debtors whose applicable commitment period is 36 months.[34]

The Moores are like many lower income consumer debtors. They have little, they make little, and they are challenged by health problems. Expecting them to save $2,000 for a chapter 7 case over a period of months while navigating the dangerous waters of collection and repossession, is not reasonable. The fact that they are judgment-proof will not stop the collection calls and letters or make them any less unpleasant. Barring the Moores from filing chapter 13 because they can only afford to pay their attorney over time, an arrangement no chapter 7 lawyer can make after the 1994 redrafting of § 330(a) as interpreted by the Supreme Court's decision in *Lamie*, would effectively bar them from *any* bankruptcy relief. [35] That is not and should not be the law.

Based upon the totality of the circumstances of this case, Doyl and Trudi Moore have met their burden of proving their bankruptcy filing and plan comply with the

---

[33] 697 F.3d 1314, 1319. Calculating plan payments exactly as the Code and Social Security Act permit cannot constitute a lack of good faith.
[34] 11 U.S.C. § 1325(b)(4).
[35] *See* 11 U.S.C. § 330(a)(1) and *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004) (Omission of the words "debtor's attorney" from 1994 amendments to § 330(a)(1) means chapter 7 debtors' attorneys may not be compensated from estate funds unless that attorney is employed by the trustee.).

**16**

good faith requirements, § 1325(a)(3) and (a)(7). They have offered to pay more than they are obliged to over the applicable commitment period. What the Moores have proposed here is wholly within the letter and spirit of the Bankruptcy Code, as well as controlling Tenth Circuit authority. Because their plan does not constitute an abuse of the provisions, purpose or spirit of Chapter 13, the Moores' chapter 13 plan is CONFIRMED and the trustee's objection is OVERRULED. The Trustee will draft the appropriate confirmation order.

# # #

17